[Cite as *Dukes v. Associated Materials, L.L.C.*, 2014-Ohio-4322.]

| | |
|---|---|
| STATE OF OHIO )<br>)ss:<br>COUNTY OF SUMMIT ) | IN THE COURT OF APPEALS<br>NINTH JUDICIAL DISTRICT |
| DE'WAYNE L. DUKES, SR.<br><br>  Appellant<br><br>  v.<br><br>ASSOCIATED MATERIALS, LLC, et al.<br><br>  Appellee | C.A. No.      27091<br><br><br>APPEAL FROM JUDGMENT<br>ENTERED IN THE<br>COURT OF COMMON PLEAS<br>COUNTY OF SUMMIT, OHIO<br>CASE No.     CV 2012 10 5713 |

DECISION AND JOURNAL ENTRY

Dated: September 30, 2014

---

MOORE, Judge.

{¶1}    Plaintiff, De'Wayne L. Dukes, Sr., appeals the ruling of the Summit County Court of Common Pleas.  For the reasons set forth below, we reverse and remand this matter for further proceedings consistent with this opinion.

I.

{¶2}    At the times relevant to this case, Mr. Dukes worked through a temporary personnel agency, Select Staffing ("Select"), and was placed at a window-manufacturing facility known as Alside, which is a division of Associated Materials, LLC ("Associated").  In 2008, Mr. Dukes' placement at Alside was terminated.  Thereafter, Mr. Dukes filed an action against Select and Associated (collectively "Appellees"), claiming employment discrimination and retaliation for having engaged in a protected activity pursuant to R.C. 4112.02(A) and (I).  Appellees each filed motions for summary judgment.  Thereafter, Mr. Dukes responded in opposition to the summary judgment motions.  Appellees filed a joint reply.  On August 30, 2013, the trial court

granted Appellees' motions for summary judgment and dismissed Mr. Dukes' claims. Mr. Dukes timely appealed from the August 30, 2013 order, and he now presents two assignments of error for our review. We have consolidated the assignments of error to facilitate our discussion.

II.

**ASSIGNMENT OF ERROR I**

THE TRIAL COURT ERRED IN FINDING THAT [MR. DUKES] DID NOT ESTABLISH A PRIMA FACIE CASE OF RACE DISCRIMINATION.

**ASSIGNMENT OF ERROR II**

THE TRIAL COURT ERRED IN FINDING THAT [MR. DUKES] FAILED TO ESTABLISH THAT APPELLEES' STATED BASIS FOR TERMINATION OF [MR. DUKES] WAS PRETEXT FOR DISCRIMINATION.

{¶3} In Mr. Dukes' assignments of error, he challenges the trial court's two bases for granting summary judgment to Appellees. In his first assignment of error, Mr. Dukes argues that the trial court erred in determining that Mr. Dukes did not establish a prima facie case of race discrimination. In his second assignment of error, Mr. Dukes argues that the trial court erred in determining that no triable issue existed as to whether Appellees' stated basis for his termination was pretext for discrimination.

{¶4} We review an award of summary judgment de novo. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105 (1996). We apply the same standard as the trial court, viewing the facts of the case in the light most favorable to the non-moving party and resolving any doubt in favor of the non-moving party. *Viock v. Stow-Woodward Co.*, 13 Ohio App.3d 7, 12 (6th Dist.1983).

{¶5} Pursuant to Civ.R. 56(C), summary judgment is proper only if:

(1) No genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party.

*Temple v. Wean United, Inc.*, 50 Ohio St.2d 317, 327 (1977).

{¶6}   The party seeking summary judgment bears the initial burden of informing the trial court of the basis for the motion and identifying portions of the record that demonstrate an absence of a genuine issue of material fact as to some essential element of the non-moving party's claim. *Dresher v. Burt*, 75 Ohio St.3d 280, 292 (1996).  "If the moving party fails to satisfy its initial burden, the motion for summary judgment must be denied." *Id.* at 293.  If the moving party fulfills this burden, then the burden shifts to the nonmoving party to prove that a genuine issue of material fact exists. *Id.*  In doing so, the non-moving party may not rest upon the mere allegations and denials in the pleadings, but instead must point to or submit some evidentiary material to demonstrate a genuine dispute over the material facts. *Id.*

{¶7}   Here, Mr. Dukes' claim pertains to R.C. 4112.02(A), which provides that it is "an unlawful discriminatory practice[ ][f]or any employer, because of the race * * * of any person, to discharge without just cause  * * * or otherwise to discriminate against that person with respect to hire, tenure, terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment."[1]   Where a plaintiff relies on indirect evidence of discrimination, the claim is "analyzed under a burden-shifting framework.  'Once a plaintiff establishes a prima facie case, the burden then shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the adverse employment action.'" *Rivers v. Cashland*, 9th Dist. Summit No. 26373, 2013-Ohio-1225, ¶ 16, quoting *Smith v. Kelly*, 2d Dist. Clark No. 2011 CA 77, 2012-Ohio-2547, ¶ 19.  "[A] plaintiff may make a prima facie showing of discrimination by

---

[1] In its order awarding summary judgment to Appellees, the trial court determined that, although Mr. Dukes also had alleged retaliation in his complaint, he failed to set forth the necessary elements of the claim, and the trial court dismissed the claim on that basis.  Mr. Dukes does not challenge the trial court's ruling in this regard.  Accordingly, we will limit our discussion to Mr. Dukes' claim for employment discrimination.

establishing that he (1) was a member of a protected class, (2) suffered an adverse employment action, (3) was qualified for the position, and that (4) a comparable nonprotected person received better treatment." *Williams v. Spitzer Auto World Amherst, Inc.*, 9th Dist. Lorain No. 07CA009098, 2008-Ohio-1467, ¶ 16. "Once the employer states a nondiscriminatory reason for the action, the burden shifts back to the plaintiff to demonstrate by a preponderance of the evidence that the reason articulated by the defendant was mere pretext." *Rivers* at ¶ 16, quoting *Smith* at ¶ 19.

{¶8} As part of their motion for summary judgment, Appellees maintained that Mr. Dukes could not establish a prima facie case of race discrimination. Further, Appellees maintained that, even if Mr. Dukes could establish a prima facie case, Appellees had a nondiscriminatory basis for removing him from his placement, and Mr. Dukes could not demonstrate pretext. In support of their arguments, Appellees pointed to Mr. Dukes' deposition, deposition exhibits, and an affidavit of an Alside employee Michelle Reif, which incorporated time records for another Select employee, Jose Flores, whom Mr. Dukes alleged was a comparable employee outside of his protected class that received disparate treatment.[2]

---

[2] We note that Appellees filed portions of Mr. Dukes' transcript with the trial court, and there exists no full transcript or certification of the court reporter in the file. "[A] deposition transcript must be authenticated before it can be considered as legally acceptable evidence for summary judgment purposes." *King v. Rubber City Arches, L.L.C.*, 9th Dist. Summit No. 25498, 2011-Ohio-2240, ¶ 19, citing *Putka v. Parma,* 90 Ohio App.3d 647, 649 (8th Dist.1993). "If a document is not of the type enumerated in Civ.R. 56(C), a trial court may consider that document when ruling on a motion for summary judgment if there is no objection." *King* at ¶ 19, citing *Wayne Sav. Community Bank v. Gardner*, 9th Dist. Wayne No. 08CA0016, 2008-Ohio-5926, ¶ 17, citing *Richardson v. Auto-Owners Mut. Ins*. Co., 9th Dist. Summit No. 21697, 2004-Ohio-1878, ¶ 29. Here, Mr. Dukes made no objection to the trial court's consideration of the partial, uncertified deposition transcript, and we conclude it was in the trial court's discretion to consider the deposition for purposes of summary judgment.

{¶9} The portions of Mr. Dukes' deposition on which Appellees rely in support of summary judgment establish the following facts which were undisputed for summary judgment purposes. Mr. Dukes, an African American man, worked through Select at Alside. Mr. Dukes worked on several manufacturing lines at Alside, and ultimately worked on the "Geneva and Preservation lines." He typically began work at 3:30 p.m. However, in May of 2007, an Alside supervisor notified Mr. Dukes' line that the line's shift would begin at 4:30 p.m. instead of 3:30 p.m. That December, another supervisor informed Mr. Dukes and his coworkers that, after the Christmas shutdown, the Geneva and Preservation line shift would return to its 3:30 p.m. start time.

{¶10} In December 2007, after Mr. Dukes learned that his start time was returning to 3:30 p.m. after the Christmas shutdown, he asked Manning Johnson, his supervisor who worked for Associated, and John Tultz, his second shift supervisor who worked for Select, for a fifteen minute adjustment to his start time due to childcare issues. After checking into the issue, both Mr. Johnson and Mr. Tultz informed Mr. Dukes that his schedule could not be changed. In January 2008, Mr. Dukes again asked Mr. Johnson to adjust his start time to delay it by fifteen minutes, and Mr. Johnson refused. Around this time, Mr. Dukes spoke with Ta'Meeka McCloud, a line leader in a different department. Ms. McCloud informed Mr. Dukes that one of her line members had his schedule adjusted due to childcare issues in November of 2007. Mr. Dukes then again requested Mr. Tultz to change his start time, and Mr. Tultz responded that he would try to find Mr. Dukes a different position, but was unable to do so.

{¶11} Alside had an attendance policy through which employees accumulated attendance points as a result of absences and tardiness. Pursuant to this policy, an employee who earned six attendance points in one calendar year was subject to employment termination. All

points were reset to zero at the beginning of each calendar year. Employees received one-half point for each instance of tardiness, and they received one point for each absence that was not approved leave. However, an exception existed where, if the employee missed two or more consecutive days and provided the company with a doctor's note for the days missed, then all of the days covered by the medical excuse would be counted as only one point.

{¶12} On eight occasions in January 2008, Mr. Dukes was tardy. On January 22, 2008, Mr. Dukes was absent, and he believed that he might have requested a vacation day on that day. On January 29, 30, and 31, 2008, Mr. Dukes claimed that he was out sick from work. A Select employee told him to bring in a doctor's excuse on his next scheduled work day, February 5, 2008. However, on February 4, 2008, the day before returning for his next shift, a Select employee called Mr. Dukes and told him that he had exceeded the maximum points under the attendance policy and was being let go by Alside. She informed Mr. Dukes that Select could attempt to find him another job. He responded that "it wasn't going down like that. I did nothing to lose this job." Thereafter, Select never offered Mr. Dukes another position, and Mr. Dukes did not inquire as to another position.

{¶13} In their motions for summary judgment, Appellees did not dispute that Mr. Dukes is a member of a protected class and that he was qualified for the position he held. Instead, they maintained, as to Mr. Dukes' prima facie case, that there was no question of fact that (1) Mr. Dukes did not suffer an adverse employment action, and (2) a comparable employee[3] outside of Mr. Dukes' protected class did not receive better treatment. *See Williams,* 2008-Ohio-1467, at ¶ 16. Appellees further argued that, even if Mr. Dukes could establish a prima facie case of

---

[3] We note that Appellees did not dispute that Mr. Flores is a comparable employee for purposes of this litigation.

discrimination, they had a legitimate reason for terminating his assignment at Alside, and Mr. Dukes could not establish pretext.

{¶14} First, as to the adverse employment action, Appellees maintained that Mr. Dukes was not fired from Select, and, instead, they interpret his response of "it wasn't going down like that" to be a refusal of further placements. From the context of the statement, it is not clear whether Mr. Dukes was responding to the statement that he was being terminated, or to the offer to find another placement. However, where his statement could be interpreted as expressing disagreement with Select's decision to release him and declaring his intention to contest the employment action, we are required to resolve any factual matters in his favor at the summary judgment stage of proceedings. *See Taylor v. Uhl*, 9th Dist. Lorain No. 13CA010441, 2014-Ohio-3090, ¶ 5 ("In ruling on a motion for summary judgment the trial court is not permitted to weigh the evidence or choose among reasonable inferences. Instead, the trial court should view the facts of the case in the light most favorable to the non-moving party and resolve any doubt in favor of the non-moving party, and we apply the same standard to our review." (Quotation and citation omitted)).

{¶15} Accordingly, as Appellees' summary judgment argument that Mr. Dukes suffered no adverse employment action was based solely upon their characterization of his statement as refusing further positions, we conclude that they failed to meet their initial *Dresher* burden of demonstrating that no question of fact remained on this issue.

{¶16} Next, as to Appellees' contention that there existed no triable issue as to whether a comparable non-protected employee was treated differently, they maintained in their motions for summary judgment that Mr. Dukes had no firsthand knowledge of Mr. Flores' altered start time, as he stated as much in his deposition. Further, Associated presented the affidavit of Ms.

Reif that contained Mr. Flores' timesheet. In Ms. Reif's affidavit, she averred that she is the human resources manager for Associated. Ms. Reif specifically averred that Mr. Flores never received an adjustment to his 3:30 p.m. start time. She attached Mr. Flores' records demonstrating his punch in and out times from November 1, 2007, through January 27, 2008. Pursuant to those records, Mr. Flores punched in after 3:30 p.m. on only three occasions and on each occasion was marked as tardy. Based upon this, we conclude that Appellees met their initial burden of establishing the absence of a question of fact as to whether Mr. Flores received more favorable treatment.

{¶17} However, in his response to summary judgment, Mr. Dukes provided the affidavit of Ms. McCloud. Ms. McCloud averred that she worked as a line lead on the second shift on the "screen line." Ms. McCloud supervised Select employees who worked on her line. As part of her job, she informed Select when one of the line employees were in violation of Associated's attendance policies. Mr. Flores worked on the screen line under Ms. McCloud's supervision in 2007. During this time, he was consistently five to thirty minutes late for work. Ms. McCloud repeatedly reported the attendance violations to Select's on-site managers. Ms. McCloud knew that Mr. Flores' wife worked first shift at Alside, and that Mr. Flores would wait with the couple's children in the parking lot until his wife had finished her shift, causing Mr. Flores' tardiness, and that Mr. Flores had requested a modification in his start time so that he could wait with his children until his wife had finished her shift. In an email dated November 8, 2007, a Select employee informed Ms. Reif that Mr. Flores' schedule was to be modified, to which Ms. Reif responded, "Why is this exactly – this is not a normal practice. Just a reminder – if this happens for 1 person, you need to make sure if anyone has the same issue it is done for all. I

don't think this is a good idea." Ms. McCloud then averred that Mr. Flores was allowed to work an altered schedule due to his childcare issues; although he was still late for work on occasion.

{¶18} Viewed in the light most favorable to Mr. Dukes, Ms. McCloud's affidavit provides that a question of fact remained as to whether Appellees extended to Mr. Flores a modification of his start time, whether or not he opted to take advantage of the accommodation. Further, although the time records submitted with Ms. Reif's affidavit indicate that Mr. Flores generally arrived before the 3:30 p.m. scheduled start-time of his line, Ms. McCloud averred in her affidavit that Mr. Flores was permitted to work an altered schedule, and, despite this, he was still late to work on occasion. Thus, a question of fact remained as to whether Mr. Dukes was treated differently from Mr. Flores.

{¶19} Therefore, the trial court erred in concluding that no triable issue remained as to adverse employment action and disparate treatment of a comparator insofar as those issues pertain to Mr. Dukes' prima facie case of discrimination.

{¶20} However, Appellees maintained that even if Mr. Dukes could prove a prima facie case of discrimination, there was no question of fact that they had a legitimate reason for terminating him from Alside: he exceeded the points for attendance. Appellees argued that Mr. Dukes could not demonstrate that his removal from his placement based upon attendance policy violations was pretext for discrimination.

{¶21} "In order to demonstrate that an employer's reasons for the adverse employment action were merely pretextual, the plaintiff must show one of the following: (1) that the proffered reasons had no basis in fact, (2) that the proffered reasons did not actually motivate the adverse employment action, or (3) that the employer's reasons were insufficient to motivate the adverse employment action." *Chiancone v. City of Akron*, 9th Dist. Summit No. 26596, 2014-Ohio-

1500, ¶ 18, citing *Manzer v. Diamond Shamrock Chem. Co.*, 29 F.3d 1078, 1084 (6th Cir.1994), citing *McNabola v. Chicago Transit Auth.*, 10 F.3d 501, 513 (7th Cir.1993). Under the first *Manzer* showing, the plaintiff must set forth evidence that "the proffered bases for the plaintiff's discharge never happened, i.e. that they are 'factually false.'" *Manzer* at 1084. Under the second *Manzer* showing, the plaintiff must "admit[] the factual basis underlying the employer's proffered explanation and further admit[] that such conduct *could* motivate dismissal. * * * In such cases, the plaintiff attempts to indict the credibility of his employer's explanation by showing circumstances which tend to prove that an illegal motivation was more likely than that offered by the defendant." (Emphasis sic.) *Id.* Under the third *Manzer* showing, the plaintiff must present evidence "that similarly situated employees were treated differently [in order to] lend support to a pretext argument." *Chiancone* at ¶ 18, citing *Smith v. Leggett Wire Co.*, 220 F.3d 752, 762 (6th Cir.2000).

{¶22} Here, Appellees maintained that Mr. Dukes' placement was terminated because he acquired eight points in January 2008, and they cited Mr. Dukes' deposition in support. In his deposition, Mr. Dukes acknowledged that four of his attendance points resulted from eight instances of tardiness. The other four points resulted from absences on January 22, 29, 30, and 31. In his deposition, Mr. Dukes did not deny his absences or dispute the applicability of the point system as contained in the attendance policy. Therefore, we conclude that Appellees met their initial *Dresher* burden of establishing that their actions were not based upon discriminatory intent.

{¶23} In his response in opposition to summary judgment, Mr. Dukes maintained that he was denied an exception to the start time which had been made for Mr. Flores, and that Mr. Dukes had incorrectly been assessed points for an approved vacation day and for his three-day

medical leave. In regard to the points accumulated for tardiness, we note that all eight instances of tardiness exceeded the fifteen minute delay to Mr. Dukes' start-time that he had requested. Be that as it may, as set forth in our discussion of Mr. Dukes' prima facie case, it appears that a question of fact existed as to whether Mr. Flores was offered a one-half hour altered start-time, an accommodation that was not offered to Mr. Dukes.

{¶24} As to the purported vacation day, in their motions for summary judgment, Appellees maintained that Mr. Dukes had no documentation showing that he was approved to take off on January 22, 2008, as a vacation day, and Appellees pointed to Ms. Reif's affidavit, wherein she averred that Associated had no record of any vacation request made by Mr. Dukes for that day. However, in his deposition testimony, Mr. Dukes claimed that he may have used a vacation day for his absence on January 22, 2008, for which he would not have accumulated a point. Mr. Dukes recalled that he had submitted a form requesting three vacation days in January, and that his supervisor had acknowledged receipt of the form when he called Mr. Dukes and inquired as to his whereabouts on a day he was absent in January. Although Mr. Dukes could not specifically recollect if January 22, 2008, was the day that he used a vacation day and his supervisor telephoned him, other than the three days Mr. Dukes was absent purportedly due to illness, January 22, 2008, was the only day he was absent in January. Accordingly, there is a genuine dispute of fact as to whether Mr. Dukes took a vacation day on January 22, 2008. Therefore, resolving doubt in Mr. Dukes' favor, we conclude that a genuine issue of material fact existed as to whether Mr. Dukes' absence on January 22, 2008, was the result of a pre-approved vacation day.

{¶25} Lastly, Mr. Dukes repeatedly maintained that his absences on January 29, 30, and 31 were the result of illness, and that he had a doctor's excuse for these days. Appellees have

maintained that they never received the doctor's excuse. However, there exists no timeframe in the attendance policy for submitting the doctor's excuse, and Mr. Dukes maintained that the Select employee told him to bring in the excuse on his next workday, but he was let go prior to the next work day. Also, it does appear from the deposition testimony that Appellees at some point acquired the doctor's excuse, as they refer to it as a deposition exhibit, although the deposition exhibit itself is not contained in the record. Therefore, viewing these facts in Mr. Dukes' favor, he would have received only one attendance point for his doctor's appointments at the end of January.

{¶26} Accordingly, viewing the above in the light most favorable to Mr. Dukes, we conclude that a genuine issue of fact remained as to whether Mr. Dukes was terminated from his placement due to a violation of the attendance policy, or whether this reason was utilized as pretext. *See Chiancone*, 2014-Ohio-1500, at ¶ 18.

{¶27} Accordingly, the trial court erred in granting summary judgment to Appellees, and Mr. Dukes' assignments of error are sustained.

### III.

{¶28} Mr. Dukes' assignments of error are sustained. The judgment of the Summit County Court of Common Pleas is reversed, and this cause is remanded for further proceedings consistent with this opinion.

Judgment reversed,
and cause remanded.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellee.

CARLA MOORE
FOR THE COURT

HENSAL, P. J.
CARR, J.
CONCUR.

APPEARANCES:

JOHN F. MYERS, Attorney at Law, for Appellant.

MARIO GAITANOS, Attorney at Law, for Appellee.

JAMES M. STONE, PATRICIA F. KREWSON and STEPHEN R. BEITING, Attorneys at Law, for Appellee.